IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

THE CENTER FOR LEGAL JUSTICE, LLC,

    Plaintiff,

v.

THE FLORIDA BAR,

    Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AGAINST DEFENDANT UNDER 42 U.S.C. § 1983 and 1988**

    Plaintiff The Center for Legal Justice, a for-profit Florida limited liability company sues for declaratory and injunctive relief against The Florida Bar. As alleged below, The Florida Bar is regulating private, for-profit lawyer referral services where it has no authority to act and, thereby, is depriving The Center for Legal Justice constitutionally protected rights:

**PRELIMINARY STATEMENT**

    1.    Lawyer Referral Service ("LRS") programs across the country provide an efficient mechanism for providing attorneys with direct referrals of potential clients, while also providing access to legal services to Americans who may otherwise lack the knowledge or information necessary to seek out counsel independently.[1] Every state has developed a regulatory scheme of one sort or another defining Bar sponsored and not-for-profit programs and the parameters for attorney involvement, and in some cases some states even dictate the operation of LRS programs themselves. The focus in these programs is on Bar sponsored and not-for-profit,

---

[1] *See, e.g.,* http://www.americanbar.org/groups/lawyer_referral/policy.html lasted visited on April 20, 2012.

with an aversion to for-profit, private lawyer referral services, which cannot be Bar regulated for various constitutional reasons.

2.  The Florida Bar claims that it does not regulate private, for-profit LRS programs; rather The Florida Bar portrays its intrusion into this market as regulating attorney participation in such programs.[2] To perpetuate this myth that Florida does not regulate private, for-profit LRS programs, The Bar's Ethics Counsel has publicly and repeatedly announced that the Bar does <u>not</u> directly regulate private referral services, essentially because it has no legal authority to do so. To this end, The Florida Bar states publicly that it can purportedly only prohibit Bar members from joining private services that do not follow certain guidelines that the Bar has generated.[3] Nowhere, however, has The Florida Bar set forth a policy or set of Rules by which it can investigate and adjudicate whether a private lawyer referral service is following Bar rules because the Bar is without the power to do so.

3.  Despite its inability to regulate a for-profit, private LRS, The Florida Bar has prepared a "Summary of Procedures For Discipline Investigations Into Noncompliant Private Lawyer Referral Services,"[4] which it capriciously uses to punish what it arbitrarily deems are "non-compliant private lawyer referral services under current Rule 4-7.10, Rules Regulating The Florida Bar."[5]

4.  Despite the fact that The Florida Bar says it does not regulate private lawyer referral services and has nowhere pointed to any authorizing Florida Supreme Court dictate

---

[2] R. Reg. Fla. Bar R. 4-7.10. There is a separate set of Bar Rules regulating Bar approved and not-for-profit lawyer referral services. *See* Chp. 8, R. Reg. Fla. Bar.

[3] "For-profit referral services draw Bar scrutiny. Are private, for-profit lawyer referral services harming the public?" http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS/352EA1AF5E31D64D8525784D006F708C -- 110315 Bar News. Last visited Mar. 8, 2012.

[4] *See* The Florida Bar Summary of Procedures For Discipline Investigations Into Noncompliant Private Lawyer Referral Services attached hereto and incorporated by reference as Exhibit A,

[5] *See* Exhibit A.

2

allowing it to do so, Bar Rule 4-7.10 purports to impose quarterly reporting requirements on private lawyer referral services and a number of restrictions on the behavior of private lawyer referral services.

5.  Because of The Bar's purported regulatory requirements, notwithstanding the questionable (if not illusory) basis for establishing a LRS regulatory scheme, on August 16, 2009, The Center for Legal Justice, LLC ("TCFLJ") obtained registration with The Florida Bar as a private Lawyer Referral Service. The Florida Bar specifically advised TCFLJ on August 20, 2009 that TCFLJ was "in compliance according to Rule 4-7.10 of the Rules Regulating the Florida Bar."[6]

6.  For more than two years The Center for Legal Justice, LLC, with The Florida Bar's blessing, built up a brand name and identity as a for-profit lawyer referral service.

7.  On December 18, 2011, based on a "confidential investigation" and "thirteen sworn complaints", The Florida Bar "revoked" TCFLJ's "registration," stating that "The Center for Legal Justice is no longer considered a Florida Bar registered referral service."[7]

8.  There are two fundamental problems with The Bar's action:

   a. First, The Bar based its decision on "confidential" complaints, without confronting TCFLJ with the complaints or permitting TCFLJ the opportunity to be heard, before The Florida Bar "revoked" the registration.

   b. Second, The Bar did provide sparse information on four of the supposed "complaints," which showed these were not complaints against TCFLJ at all.[8]

---

[6] *See* The Florida Bar letter dated 08.20.09 written by Tameika Gainouss attached hereto and incorporated by reference as Exhibit B.
[7] *See* The Florida Bar letter dated 12.18.11 written by Kathy J. Bible attached hereto and incorporated by reference as Exhibit C.
[8] *See* The letter dated 01.30.12 written by Robby H. Birnbaum, Esq. attached hereto and incorporated by

3

i. The McGee Affidavit, dated the 25th of October 2011 and supposedly made by a Utah resident, as TCFLJ explained to The Bar, is a stand-alone document that says nothing meaningful. Of course, The Bar did not investigate, refused to share any information about the genesis of the Affidavit or any other material relating to it with TCFLJ, and did not permit TCFLJ to respond to the Affidavit before revoking TCFLJ's registration as a lawyer referral service on December 18, 2011.[9]

ii. Case File 20120043 is, in reality, a lawyer's October 19, 2011 request for advertising approval, which The Bar ultimately disapproved. Nevertheless, The Bar deceptively called the advertisement review a "complaint" against TCFLJ and relied on it as a reason to revoke TCFLJ's registration, when The Bar knew full-well that this was not a complaint against TCFLJ at all.[10]

iii. Case File 201151546 is a complaint about a lawyer (Howard Feinmel), not TCFLJ.[11] Reality, however, does not stop The Bar from intentionally mischaracterizing this complaint about a lawyer as a complaint about TCFLJ and from using that complaint to justify the revocation of TCFLJ's registration.

iv. Case File 2012450454 likewise is a complaint about a lawyer (Howard Feinmel), not TCFLJ, by two clients who were serving as class representatives in a class action the lawyer filed for the clients.[12] Again, The Bar intentionally ignores reality and purposefully mischaracterizes the complaint against the lawyer as one against TCFLJ in order to revoke TCFLJ's registration.

---

reference as Exhibit D.
[9] *See* Exhibit D.
[10] *See* Exhibit D.
[11] *See* Exhibit D.
[12] *See* Exhibit D.

9. In the December 18, 2011 letter, The Florida Bar cited three specific Rules as the authority for revoking TCFLJ's registration: Rule 4-7.10 "Lawyer Referral Service"; Rule 4-7.4(a) "Direct Contact with Prospective Clients" and Rule 4-8.4(a) "Misconduct."

10. Given that TCFLJ is not and cannot be subject to any one of these Rules, none of them provides a basis for The Florida Bar's action in revoking TCFLJ's registration, even overlooking that The Bar had no facts to back up its conclusion.

11. What does explain The Florida Bar's action against TCFLJ is a publicly aired animus by the State of Florida Chief Financial Officer Jeff Atwater against for-profit LRS and his intent to "ban the [private, for-profit] services."[13]

    a. In other words, The Florida Bar has made a conscious decision to regulate where it has no authority to regulate, by targeting businesses it (and the State of Florida) views unfavorably, such as TCFLJ, for annihilation, all in blatant disregard of TCFLJ's constitutionally protected commercial free speech rights and contractual relations.

    b. In fact, The Florida Bar News reported that The President of the Bar publicly announced his intention to reign in private referral services, in favor of nonprofit lawyer referral services administered by local bar associations.[14] That is, The Florida Bar is promoting its own lawyer referral services at the expense of legitimate commercial services such as TCFLJ.[15]

    c. The Florida Bar is pursuing this course of targeting for-profit lawyer referral services even though its Board of Governors member Grier Wells, who chairs the special LRS

---

[13] *See* The Florida Bar News dated 12.01.11 "Atwater calls for ban on referral services" attached hereto and incorporated by reference as Exhibit E.

[14] *See* The Florida Bar News dated 12.15.11 "Hawkins supports reining in private referral service abuses" attached here to and incorporated by reference as Exhibit F. *See also* "Response letter from President Hawkins to CFO Atwater" http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS/9AD191EC19D5A9F785257951004E0EE6 -- 111122 Bar News. Last visited April 16, 2012 -- The Florida Bar letter dated 11.22.11 written by Scott G. Hawkins attached hereto and incorporated by reference as Exhibit G.

[15] *See* Exhibits E, F & G.

5

committee, has acknowledged that the Bar cannot regulate non-lawyers who own private for-profit referral services.[16]

## JURISDICTION AND VENUE

12. This is an action brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 and 28 U.S.C. §§ 2201 and 2202 for declaratory and an injunctive relief.

13. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

14. This Court has subject-matter jurisdiction over general challenges to the rules of the state bar, including the validity of or a challenge to the application of a state bar rule.[17]

15. A substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)

## PARTIES

16. Plaintiff, The Center For Legal Justice, LLC, is a Florida, for-profit, limited liability company.

17. Defendant, The Florida Bar, is the organization of all lawyers who are licensed by the Supreme Court of Florida to practice law in the state. The Florida Bar is an arm of the Florida Supreme Court relating to the practice of law in the state.

## GENERAL FACTUAL ALLEGATIONS

### A. The Florida Bar has an obligation to abide by the Rules Regulating the Florida Bar and The Florida Bar Bylaws.

18. Article V, Section 15 of the Constitution of the State of Florida gives the Supreme Court of Florida exclusive and ultimate authority to regulate the admission of persons to the practice of law and the discipline of those persons who are admitted to practice. This provision

---

[16] *See* Exhibit E.
[17] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 485-86, 103 S. Ct. 1303, 1316-17 (1983).

of the Florida Constitution establishes the boundaries of the Court's and The Florida Bar's right and authority to regulate the provision of legal services in the State of Florida. The Court performs those official functions through two separate arms: the Florida Board of Bar Examiners, which screens, tests and certifies candidates for admission to the practice; and The Florida Bar, the investigative and prosecutorial authority in the lawyer regulatory process.

19. The Rules Regulating the Florida Bar are The Florida Bar's principal tools supporting the Bar's investigative and prosecutorial authority in the lawyer regulatory process. The Rules Regulating the Florida Bar became effective January 1, 1987.[18] The Code of Professional Responsibility and the Florida Bar Integration Rule have been superseded by the Rules Regulating the Florida Bar.[19] In the current formulation, the integration rule, bylaws, and code of professional responsibility no longer exist separately; rather, all rules pertaining to the Bar have been integrated, in a chapter format, into a single document.[20]

20. The bylaws of The Florida Bar govern the "method and manner by which the requirements of the" Rules Regulating the Florida Bar are met.[21]

21. The bylaws of The Florida Bar require the board of governors to "define the specific powers, duties, functions and scope" of standing and special committees.[22]

22. One of The Florida Bar's special committees is the "Special Committee on Lawyer Referral Services."

> "The Special Committee on Lawyer Referral Services is tasked with <u>reviewing</u> the current practices of lawyer referral services, <u>reviewing</u> all rules applicable to lawyer referral services, and <u>reviewing</u> any other regulations that may be applicable to lawyer

---

[18] *The Florida Bar re Rules Regulating The Florida Bar*, 494 So. 2d 977, 978 (Fla. 1986), opinion corrected, 507 So. 2d 1366 (Fla. 1986).
[19] *The Florida Bar v. Hosner*, 513 So. 2d 1057, fn. 1 & 2 (Fla. 1987).
[20] *The Florida Bar re Rules Regulating The Florida Bar*, 494 So. 2d at 978.
[21] R. Reg. Fla. Bar R. 1-11.1.
[22] Fla. Bar Bylaws, Bylaw 2-8.3.

7

referral services. **Included within this charge is <u>reviewing</u> the issue of whether and to what extent The Florida Bar can directly regulate lawyer referral services**. The special committee is charged with making recommendations to The Florida Bar Board of Governors regarding any changes to the Rules Regulating The Florida Bar and any other action deemed necessary to protect the public and ensure compliance with the lawyer advertising rules."[23]

23. The Special Committee on Lawyer Referral Services has an obligation to abide by all of the Rules Regulating the Florida Bar and The Florida Bar Bylaws, limiting itself only to the specific matters with which it is tasked by the Florida Bar's Board of Governors.

24. The Florida Bar has an obligation to abide by all of its own rules: the Rules Regulating the Florida Bar and The Florida Bar Bylaws.

### B. Chapter 8, R. Reg. Fla. Bar -- Lawyer Referral Rule; The Florida Bar Lawyer Referral Service Rules and Regulations

25. The Florida Bar proclaims that the Lawyer Referral Service Committee is charged with overseeing the operation of The Florida Bar Lawyer Referral Service.[24] The scope and function of this Special committee centers on the supervision and promotion of **<u>Bar-sponsored lawyer referral services in Florida</u>**. The committee conducts workshops for referral service staff and evaluates needs/issues facing Bar-sponsored services such as panel specialization and requirements, promotion, panel recruitment, requirements for establishment of new services, **<u>and compliance with the Rules Regulating The Florida Bar</u>**.

---

[23] *See* Special Committee on Lawyer Referral Services -- http://www.floridabar.org/tfb/TFBComm.nsf/6b07501281c8e567852570000072a0b9/7e36a374fd8c753285257823004c9d5f!OpenDocument. Last visited Mar. 8, 2012; (emphasis added).

[24] *See* The Florida Bar website: Standing Committees Lawyer Referral Service http://www.floridabar.org/DIVEXE/BD/CMStanding.nsf/2021e58ed0c7505585256e45004b060d/2089c616c2cf60a785256c5b00554826?OpenDocument. Last visited Mar. 8, 2012.

26. The Chapter 8 "Lawyer Referral Rules" found in the Rules Regulating the Florida Bar apply **by design** only to "lawyer referral services operated by a local bar association,"[25] and not to private for-profit lawyer referral services.

27. The Florida Bar Lawyer Referral Service Rules and Regulations, as set forth in the "Explanatory Note . . . are not part of The Rules Regulating The Florida Bar. The Rules and Regulations were adopted by the Board of Governors of The Florida Bar to implement Chapter 8 of the Rules Regulating the Florida Bar." The Florida Bar Lawyer Referral Service Rules and Regulations do not, **by design**, apply to private for-profit lawyer referral services.

28. As the foregoing shows, The Florida Bar (and the committee) by design favors and promotes the Bar sponsored programs, which compete with for-profit services like TCFLJ while restricting and thwarting the activities of for-profit lawyer referral services.

29. For example, where The Bar promotes Bar sponsored programs, it does nothing to assist private lawyer referral services, claiming it has no right to regulate such entities. The Bar is openly hostile to private lawyer referral services, as the expressed animosity found in the audio-record of a recent Public Hearing on the subject poignantly demonstrates.[26]

30. While claiming it has to keep hands-off private lawyer referral services, The Bar in reality makes subjective judgments about what it thinks and believes those entities are doing, never relying on hard facts or reality. The Bar acts on these beliefs to regulate private lawyer referral services.

---

[25] R. Reg. Fla. Bar R. 8-2.1.
[26] *See, e.g.,* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012, last visited on April 18, 2012 (acknowledging that The Bar "can't control [private LRS]", yet, discussing imposing a larger "registration fee" on a private LRS).

9

31.     For example, The Florida Bar indirectly – since it cannot do so directly - imposes its regulatory imprimatur upon private, for-profit lawyer referral services by mandating compliance with Rule 4-7.10, R. Reg. Fla. Bar -- Lawyer Referral Services by those lawyers who chose, as is their right, to affiliate with a for-profit lawyer referral service.

### C. Rule 4-7.10, R. Reg. Fla. Bar Applies to Lawyer Referral Services

32.     Private for-profit lawyer referral services were first recognized in this state by the Florida Bar in January 1987.[27]

33.     Despite the fact that The Florida Bar cannot *de jure* regulate private, for-profit lawyer referral services, it has promulgated *de facto* rules that do regulate for-profit lawyer referral services.

34.     Under the current Rule 4-7.10(c) a "lawyer referral service" is defined as:

(1) any person, group of persons, association, organization, or entity that receives any consideration, monetary or otherwise, given in exchange for referring or causing the direct or indirect referral of a potential client to a lawyer selected from a specific group or panel of lawyers; or

(2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program.

A pro bono referral program, in which the participating lawyers do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.

35.     Rule 4-7.10(a) states that Florida lawyers may accept referrals from a lawyer referral service **when the service**:

---

[27] Case adopting then Rule 4-7.6 *The Florida Bar re Rules Regulating The Florida Bar*, 494 So. 2d 977, 1075-77 (Fla. 1986).

10

(1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;

(2) receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;

(3) refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida;

(4) carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;

(5) furnishes The Florida Bar, on a quarterly basis, the names and Florida bar membership numbers of all lawyers participating in the service;

(6) furnishes The Florida Bar, on a quarterly basis, the names of all persons authorized to act on behalf of the service;

(7) responds in writing, within 15 days, to any official inquiry by bar counsel when bar counsel is seeking information described in this subdivision or conducting an investigation into the conduct of the service or an attorney who accepts referrals from the service;

(8) neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is subject to chapter 8 of these rules;

(9) uses its actual legal name or a registered fictitious name in all communications with the public; and

(10) affirmatively states in all advertisements that it is a lawyer referral service.

36.     Not one of these ten things requires an affirmative act of a lawyer; yet, each prohibits the private, for-profit lawyer referral service from doing something or requires it to do something.

37.     The rule is a charade and is, in fact, a direct regulation of private, for-profit lawyer referral services.

38. No lawyer is really regulated by this Rule, only a for-profit non-lawyer business is regulated, a market that is supposed to be regulated, if at all, by legislative enactment, not by an organization whose constitutional mandate is quite restricted.

39. What the Rule does is restrict the lawyer referral service's and lawyer's right of commercial association, right of contract, right of commercial free speech under the guise of some sort of disciplinary dictate.[28]

40. The rule permits The Bar, without oversight and without accountability, to arbitrarily and capriciously target private lawyer referral services and the lawyers associated with the LRS in order to drive the private, for-profit lawyer referral service out-of-business.

41. The Bar's bare "belief" about private, for-profit lawyer referral services, manifested in the manner in which it has dealt with TCFLJ is not a basis to unconstitutionally do indirectly what it cannot do directly – prohibit commercial speech.[29]

42. The Committee relied on and discussed what it referred to as the Barry Richard Opinion Letter, which is not publicly available and parts of which the Committee claimed were protected by the "attorney-client" privilege.[30]

43. The Bar's Special Committee, in the purported Public Hearing, expressed its "goal" is to "get more information . . . about these people" who seek registration, including imposing a "registration fee" and other new requirements of lawyer referral services.[31]

---

[28] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012, at approximately the 24 minute mark, last visited on April 18, 2012 (just because The Bar cannot regulate a private LRS, a Member of the Special Committee stated, that "doesn't mean we can't tell lawyers you can't deal with these [private LRS] people.").

[29] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012, last visited on April 18, 2012.

[30] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012 at approximately the 31 minute mark of the Hearing, last visited on April 18, 2012.

[31] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309

44. The Bar's Special Committee, in the purported Public Hearing, notwithstanding its professed lack of authority to do so, also expressed its desire to regulate lawyer referral services, even if the lawyer referral service was operating nationally, and making referrals to lawyers in other states.[32]

45. The Bar's Special Committee, in the purported Public Hearing, recognized the limits on its authority and the "constitutionality" issues, which led one participant to announce that the architect of the proposed changes to the rule, Barry Richard, would have to defend The Bar **"If anyone would <u>dare</u> file a lawsuit"** against The Bar about the restrictions on a private LRS.[33]

46. The Bar justifies its actions on a rule it admits does not apply, and which was implemented without, the involvement of for-profit lawyer referral services.

47. Under Rule 1-12.1 any proposed action by The Bar requires procedural safeguards, but because The Bar says the Rules only apply to lawyers and not for-profit, private lawyer referral services, these entities are not invited or permitted to participate in the process and do not receive notice of any proposal that directly and adversely affects them.

48. The Bar believes that since it cannot regulate private, for-profit lawyer referral service – although as demonstrated above it plainly does so - that none of the Rules Regulating

---

Special Committee on LRS Meeting - Orlando - March 9, 2012 at approximately the 17 minute mark of the Hearing, last visited on April 18, 2012.

[32] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012 at approximately the 22 minute mark of the Hearing, last visited on April 18, 2012 ("no one can be taken as a client unless the lawyer to whom the client is referred to is licensed in the state in which the person lives, if you're gonna solicit a person living in Arizona you're going to have to have a licensed Arizona lawyer in the group.").

[33] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012 at approximately the 29 minute mark of the Hearing, last visited on April 18, 2012; (emphasis added).

the Florida Bar afford such entities any procedural right or opportunity to participate in rule making that directly affects the service.

### D. The Center for Legal Justice Satisfies the Registration Requirement for Rule 4-7.10, R. Reg. Fla. Bar.

49.     Not because it was obligated to, but to appease The Florida Bar's belief that it can *de facto* regulate a LRS, TCFLJ made application for registration as a for-profit, lawyer referral service.

50.     On August 16, 2009, The Center for Legal Justice, LLC obtained registration with The Bar as a private Lawyer Referral Service. The Florida Bar specifically advised TCFLJ on August 20, 2009 that "The Center For Legal Justice" was "in compliance according to Rule 4-7.10 of the Rules Regulating the Florida Bar."

51.     The Bar had no objection to TCFLJ operating under that name for over two years; that is, for over two years TCFLJ used the word Legal as part of its name.

52.     On December 18, 2011, in a Star Chamber like "confidential investigation", The Florida Bar "revoked" TCFLJ's "registration," stating that "The Center for Legal Justice is no longer considered a Florida Bar registered referral service."

53.     In revoking the registration, The Bar condemned TCFLJ's use of the word Legal in its name, calling it an unlicensed practice of law issue. So, what had been acceptable for several years became unacceptable literally overnight.

54.     The Florida Bar cited three specific Rules as the authority for its actions, including the revocation of TCFLJ's registration: Rule 4-7.10 "Lawyer Referral Service"; Rule 4-7.4(a) "Direct Contact with Prospective Clients" and Rule 4-8.4(a) "Misconduct."

55. Not one of these three Rules provides a basis for The Florida Bar's action in revoking TCFLJ's registration.

56. The Bar's action against TCFLJ based in these purported Rule violations is designed and intended to have a chilling effect on the choices lawyers have to affiliate with a for-profit LRS. The "regulation without representation" aspect of The Bar's LRS registration "requirement" runs rough-shod over constitutional free speech rights that are directly being chilled by The Bar forcing its regulatory scheme upon a market it has no right to regulate

57. The reason The Florida Bar revoked TCFLJ's registration and took action against TCFLJ is a publicly stated desire on The Florida Bar's part to "ban the [private, for-profit] services" in favor of competitive non-profit services endorsed and actively supported by The Florida Bar. In other words, The Florida Bar has made a conscious decision to regulate where it has no authority to regulate, and to disregard TCFLJ's commercial free speech rights and contractual relations. And, The Bar stares-down "anyone [who] would dare file a lawsuit" on this issue.[34]

58. The Florida Bar itself has publicly stated that it lacks the authority to regulate a LRS such as TCFLJ. The following is a excerpt taken from an article published by The Florida Bar News, dated October 15, 2011:

> The final panel [regarding private LRS] included Bar Ethics Counsel Elizabeth Tarbert; Unlicensed Practice of Law Counsel Lori Holcomb; Jan Wichrowski, who directs the Bar's Orlando Lawyer Regulation branch; and Kathy Bible, who prosecutes violations of Bar advertising rules.
>
> **They noted that the Bar cannot directly regulate lawyer referral services** but can prohibit lawyers from belonging to services that don't follow Bar rules, including advertising regulations. They also said that any

---

[34] *See* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012 at approximately the 29 minute mark of the Hearing, last visited on April 18, 2012; (emphasis added).

15

enforcement of violations of advertising, UPL, or other Bar rules cannot start without someone making a complaint to the Bar.

59.     In furtherance of The Florida Bar's attempt to regulate where it has no authority, The President of the Bar has publicly announced his intention to "reign[] in private referral services", in favor of nonprofit lawyer referral services administered by local bar associations.[35] That is, The Florida Bar wants to prefer local bar association lawyer referral services over private, for-profit services.

60.     Revoking TCFLJ's registration is just one example of how The Florida Bar is trying to circumvent its lack of authority by suggesting that it is really imposing a "regulation" on lawyers who have no ability to do or not do any of the ten things that the Rule requires of a LRS.

61.     The Bar's actions underscore the fallaciousness of the Rule: the Rule enumerates ten very specific things that must be done or refrained from, but those things are not directed at the person who ostensibly has the obligation to abide by the Rule.  By definition, the Rule – like all of the other rules – can only require that lawyers do or not do the things that are required or prohibited.  But here, not a single one of these ten things is anything that any lawyer can either do or not do. So, if this Rule is not really pointed to lawyers, then who?

62.     Regulating private referral services raises both commercial free speech and separation of powers questions. Government can only regulate commercial speech that is misleading or proposes an illegal action, and then any regulation must be narrowly tailored to the legitimate interest the government has in that area.[36] The separation of powers issue arises

---

[35] *See* Exhibit G "Response letter from President Hawkins to CFO Atwater" http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS/9AD191EC19D5A9F785257951004E0EE6  -- 111122 Bar News.

[36] "For-profit referral services draw Bar scrutiny. Are private, for-profit lawyer referral services harming

16

because, while the Supreme Court regulates the practice of law, it is not clear that the Supreme Court's power extends to regulating private lawyer referral services.[37]

### E. Section 1983 Protects against Deprivations of Rights Secured by the Constitution

63. Pursuant to 42 U.S.C. § 1983, a cause of action may be maintained against any person acting under color of law who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

### COUNT I: DECLARATORY RELIEF

64. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 - 63 above as if set forth herein in full.

65. As alleged herein, there is an independent (non-declaratory relief) federal question basis for the district court's subject matter jurisdiction under this claim.

66. Each year TCFLJ satisfied each of the ten requirements in Rule 4-7.10.

67. Despite TCFLJ satisfying Rule 4-7.10, The Florida Bar has revoked TCFLJ's registration and declared that the use of the word "Legal" in its name was no longer permissible and constitutes the unlicensed practice of law.

68. Among other things, in denying TCFLJ the right to use a trade-name for which it had developed a brand identity over the two years and which The Bar considered an acceptable name for a registered LRS, The Bar has harmed TCFLJ.

---

the public?"  http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS/352EA1AF5E31D64D8525784D006F708C --
110315 Bar News. Last visited Mar. 8, 2012 attached hereto and incorporated by reference as Exhibit H.
[37] *See* Exhibit H.  *See also* http://www.floridabar.org/cmdocs/cd001.nsf/WDOCS -- Public Hearing, Audio Transcript 120309 Special Committee on LRS Meeting - Orlando - March 9, 2012 at approximately the 30 minute mark of the Hearing, last visited on April 18, 2012; (when discussing whether the Florida Supreme Court can say what a LRS can do, a participant said "maybe they can, maybe they can't").

69. The Bar's ostensible reasons for the revocation, delivered by letter dated December 18, 2011, without any notice or opportunity to be heard, rests on a "confidential" investigation and sworn complaints, which the Bar simply credited without analysis or thought. By stating a pure conclusion that the complaints were received "from individuals, who are unknown to each other"[38] and literally misrepresenting that the complaints were about TCFLJ, The Bar executed its policy of eliminating private lawyer referral services from the state.

70. Because The Bar did not provide TCFLJ notice or an opportunity to be heard, TCFLJ explained to The Florida Bar only after The Bar had revoked TCFLJ's registration) that TCFLJ never engaged in unsolicited, outbound calls to consumers.

71. Once The Florida Bar elected to offer LRS registrations, it no longer possessed the authority to deny a private, for-profit lawyer referral service a registration where the LRS has satisfied each of the ten requirements in Rule 4-7.10.

72. As alleged herein, The Florida Bar is attempting to regulate the conduct of the TCFLJ, which is protected by the First and Fourteenth Amendments of the U.S. Constitution and Article I, § 4 of the Florida Constitution.

73. As alleged herein, The Florida Bar is attempting to regulate the commercial speech of the TCFLJ without any rule, regulation or supporting authority.

74. As alleged herein, The Florida Bar does not have jurisdiction or authority to capriciously revoke TCFLJ's registration.

75. As alleged herein, The Florida Bar has exceeded its authority.

76. As alleged herein, The Florida Bar is attempting to regulate the conduct of the TCFLJ without any due process and without equal protection of the laws.

---

[38] *See* The Florida Bar letter dated 12.18.11 written by Kathy J. Bible attached hereto and incorporated by reference as Exhibit C.

77. As the preceding allegations show:

    a. There is a bona fide, actual, present practical need for the declaration sought from this Court.[39]

    b. The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

    c. There is some immunity, power, privilege or right of Plaintiff that is dependent upon the facts or the law applicable to the facts.

    d. The Florida Bar has, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter of this claim, either in fact or law.

    e. The antagonistic and adverse interests are all before the Court by proper process.

    f. The relief sought is not merely giving of legal advice by the Court or the answer to questions propounded from curiosity.

    g. In the absence of this Court's declaration, the injury to Plaintiff is a real damage and not merely speculative.

78. Plaintiff is entitled to have such doubts removed and to have all parties' rights and obligations judicially declared.

79. Declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue as alleged herein.

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

    A. Enter a declaratory judgment that The Florida Bar's actions exceed the authority granted by the Florida Supreme Court and constitute impermissible rule making or legislation;

---

[39] Fed.R.Civ.P. 57; 28 U.S.C. §2201.

B. Enter a permanent injunction prohibiting The Florida Bar from further action that violates the Equal Protection Clause;

C. Award damages as determined at trial;

D. Award Plaintiff all costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

E. Order any further relief the Court deems just and proper.

Dated: May 17, 2012

                                  Respectfully submitted,

*s/Richard Epstein*
RICHARD W. EPSTEIN
Fla. Bar No. 229091
richard.epstein@gmlaw.com
REBECCA F. BRATTER
Fla. Bar No. 685100
rebecca.bratter@gmlaw.com
GREENSPOON MARDER, P.A.

200 East Broward Blvd., Suite 1500
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6956 (Facsimile)

*Counsel for The Center for Legal Justice*